Tyler D. Williams       [ISB No. 8512]
Reid K. Peterson        [ISB No. 10091]
NELSON | WILLIAMS
Attorneys at Law
999 W. Main Street, Ste. 500
Boise, ID 83702
Telephone No. (208) 383-9511
Facsimile No. (208) 383-9516
Email: tyler@nelsonwilliamslaw.com; reid@nelsonwilliamslaw.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBIN JUKER, individually as the natural father of MACEY JADEN JUKER, a deceased person, SHERRY FRANCIS individually as the natural mother of MACEY JADEN JUKER a deceased person and JORDIN JUKER SCHMIDT individually as the natural sister of MACEY JADEN JUKER a deceased person, and the ESTATE OF MACEY JADEN JUKER, | Case No: 1:25-cv-00304-DCN **REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT (DKT. 5)** |
| Plaintiffs, | |
| v. | |
| CHASE FIDDLER, in his official and individual capacities, JASON PIETRZAK, in his official and individual capacities, RYAN POLLARD, in his official and individual capacities, KIRK RUSH, in his official and individual capacities, CRAIG SOUSA, in his official and individual capacities, DOMINIC ROGERS, in his official and individual capacities, JACOB LEE, in his official and individual capacities, JONATHON HOWARTH, in his official and individual capacities, BOISE POLICE DEPARTMENT, a political subdivision of the State of Idaho, RON WINEGAR, in his individual and official | |

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 1.**

capacities, CITY OF BOISE, a political subdivision of the State of Idaho, JOHN or JANE DOES # 1-10, whose true identities are presently unknown,

     Defendants.

## I. ARGUMENT

Plaintiffs have failed to demonstrate that they have stated any plausible claims against any of the Defendants. Plaintiffs have failed to demonstrate that the individual defendants are not entitled to qualified immunity and have failed to show that their claims against the City are plausibly pleaded. Finally, because none of the claims are plausible, Plaintiffs do not have an actional wrongful death claim. Plaintiffs' claims against all Defendants should be dismissed.

As an initial matter Plaintiffs have failed to provide argument in opposition to Defendant's contention that (1) there is no basis of liability alleged against Chief Winegar; (2) the official capacity claims are redundant (3) the Boise Police Department is an improper party; and (4) that Jordin Juker Schmidt may not bring a wrongful death claim under Idaho law. When a plaintiff fails to respond to arguments on a claim in a motion to dismiss, courts general dismiss those claims with prejudice, as the plaintiff has conceded those arguments and acknowledged they should be dismissed. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, 741 F. Supp. 3d 1050, 1055 (N.D. Cal. 2024). Plaintiffs failure to respond to these four arguments means they are abandoned.

**A.**    **Plaintiffs have failed to show that Juker had a clearly established right to be free of deadly force under the circumstances confronting officers.**

Plaintiffs have failed to direct the Court to a squarely governing case that would show a reasonable officer that utilizing deadly force under the circumstances here clearly violated Juker's constitutional rights. When an official raises qualified immunity as a defense, "the burden is on

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 2.**

the plaintiff to prove two elements: (1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva v. Sacramento Sheriff's Dept.*, 872 F.3d 938, 946 (9th Cir. 2017). Thus, Plaintiffs must present the Court with "existing precedent" that places the "constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Plaintiffs have failed to meet their burden.

Instead, Plaintiffs attempt to frame the qualified immunity standard with impermissible broadness. Plaintiffs merely state the general proposition that Juker had the right to be free of excessive force. (Dkt. 10, p. 8–9.) But the Supreme Court has routinely cautioned courts "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. A general proposition of the law "is of little help in determining whether the violative nature of <u>particular conduct</u> is clearly established." *Id.* (emphasis added). Accordingly, "the right must be defined at a more specific level tied to the factual and legal context of a given case." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 729 (9th Cir. 2022) (citing *Reichle v. Howards*, 566 U.S. 658, 665 (2012)); *see also Sharp v. Cnty. of Orange*, 871 F.3d 901, 916 (9th Cir. 2017) ("Plaintiffs have also failed to identify a case that pronounces a constitutional rule at a level of specificity sufficient to alert these deputies here that their conduct was unconstitutional in the specific circumstances they confronted.").

The correct framing of the qualified immunity analysis in this case is therefore whether officers confronting an armed suspect, experiencing a mental health crisis, who believes he is being targeted by assailants, fleeing from officers and disregarding commands, and firing a rifle in a residential neighborhood were prohibited from responding with deadly force. As set forth in Defendants' Memorandum, existing case law not only does not prohibit the use of deadly force in such circumstances, it authorizes such use of force. (*See* Dkt. 8-1, pp. 7–9 (citing cases).)

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 3.**

To sidestep the correct analysis, Plaintiffs improperly identify actions they believe, in retrospect, might have yielded a different outcome. First, they allege Officer Lee failed to approach Juker's door, instead calling him on the phone. Second, they allege that the officers on scene failed to call a crisis negotiator or the City's behavior health response team. Third, they allege that the officers on scene delayed taking Juker into custody. In so doing, Plaintiffs are asking the Court to hold the officers to Plaintiffs' opinion of best practices and do exactly what is prohibited: view the incident "with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). But the Court must instead view the facts from "the perspective of a reasonable officer on scene." *Id*. And from this lens, each of these allegations was objectively reasonable.

      1.      <u>Calling Juker instead of going to his home</u>.

Plaintiffs allege that the shooting would have been avoided if Officer Lee had gone directly to Juker's home instead of calling him. (Dkt. 10, p. 9.) But Plaintiffs do not cite to any authority for the proposition that Officer Lee was required—or that it would even be advisable—to do so. Officer Lee was aware that Juker was armed, intoxicated, and apparently in the middle of a paranoid delusion wherein he believed individuals were trying to get into his home to harm him. (Dkt. 5, ¶¶ 21–28.) Blindly approaching Juker's door in such circumstances was neither a reasonable nor a safe option for officers. *See Graham*, 490 U.S. at 396-97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving…"). Based on the circumstances, it was highly likely that doing so would have resulted in Juker mistaking the officers for his phantom assailants and opening fire. Officer Lee's decision to make contact with Juker by phone was therefore reasonable.

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 4.**

2.    <u>Failing to call a crisis negotiator or behavioral health response team</u>.

Plaintiffs also fault the Officers for not engaging a mental health team to respond to the incident. But nowhere within the Complaint or Response do Plaintiffs identify why the officers were required to engage such a team under the circumstances. *See Howell v. Mun. of Anchorage*, 646 F. Supp. 3d 1047, 1077 (D. Alaska 2022) (noting that while a model policy "may be an appropriate or even ideal model for dealing with mentally unstable individuals does not mandate that all other training, policies, and procedures are inadequate.") (quoting *Spears v. Gautreaux*, 2020 WL 3271993, at *24 (M.D. La., June 17, 2020). Instead, Plaintiffs merely assume that such a response was required or was best practice under the circumstances, ignoring of course that this was no mere mental health crisis; Juker was armed and was firing his weapon even before officers arrived. Plaintiffs' assumption again incorrectly frames the analysis from the standpoint of hindsight, and does not evaluate the tense circumstances confronting the Officers in the moment. *See Graham*, 490 U.S. at 396-97.

In any event, Ninth Circuit case law does not establish that an armed person in a mental health crisis has the right to be free from deadly excessive force. *See E.K.B. v. City of Azusa*, 2024 WL 2967928, at *7–8 (C.D. Cal., May 31, 2024). Instead, the existence of a mental health crisis or mental health issues is simply a part of the totality of the circumstances confronting officers. *Glenn v. Washington Cnty.*, 673 F.3d 864, 875 (9th Cir. 2011); *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1078 (9th Cir. 2019); *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021); *Estate of Strickland v. Nevada Cnty.*, 69 F.4th 614, 620 (9th Cir. 2023). Officers were not obligated to call and wait for a crisis intervention team while Juker fired shots in a residential neighborhood.

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 5.**

3.      Delaying taking Juker into custody.

Finally, Plaintiffs fault the Officers for not taking Juker into custody sooner. But this argument too ignores Ninth Circuit precedent. "[T]he appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Thus, officers "need only act within that range of conduct [courts] identify as reasonable." *Id*. The *Scott* court explained:

> Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. In the heat of battle with lives potentially in the balance, an officer would not be able to rely on training and common sense to decide what would best accomplish his mission. Instead, he would need to ascertain the least intrusive alternative (an inherently subjective determination) and choose that option and that option only. Imposing such a requirement would inevitably induce tentativeness by officers, and thus deter police from protecting the public and themselves. It would also entangle the courts in endless second-guessing of police decisions made under stress and subject to the exigencies of the moment.

*Id*. Where the Officers were aware that Juker was behaving erratically, reported being intoxicated, had previously fired shots, and could not be certain whether Juker remained armed,[1] a tactical pause before initiating an arrest is reasonable..

The Officers' conduct throughout the arrest was reasonable based upon the circumstances they were confronted with. Juker had reported being intoxicated, was apparently experiencing paranoid delusions, reported being armed, and fired several shots in a residential neighborhood before initially surrendering. Juker then fled from the Officers, retrieved his rifle, and fired shots before the Officers finally utilized deadly force in response. Plaintiffs have failed to identify any case that "pronounces a constitutional rule at a level of specificity sufficient to alert these [officers]

---

[1] Whether Juker was fully disarmed immediately prior to his flight from officers is not relevant. Neither the Complaint nor Plaintiffs' Response indicate that the Officers were able to ascertain that Juker was fully disarmed. *See Graham*, 490 U.S. at 396. Thus, the extent to which Juker remained an ongoing threat to them remained uncertain from their perspective.

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 6.**

here that their conduct was unconstitutional in the specific circumstances they confronted." *Sharp*, 871 F.3d at 916. The Officers are entitled to qualified immunity.

**B.    Plaintiffs have not plausibly pleaded a conspiracy claim.**

Plaintiffs allege that the Officers engaged in "concerted attempts to <u>conceal</u> the use of excessive force" against Juker. (Dkt. 5, ¶ 96; *see also id.*, ¶¶ 92, 94.) Thus, the Complaint appears to implicate post-shooting conduct. (*See id*.) But their Response brief instead appears to claim that Officers Lee and Howarth conspired to prevent other officers from taking Juker into custody when it was safe to do so, resulting in Juker's death. (*See* Dkt. 10, p. 10.) Despite this reversal, nothing plausibly show either scenario – and in any event the Complaint is the operative document setting out the pleadings.

There are no plausible allegations that any of the Officers <u>knew</u> that Juker was fully disarmed at the time of his initial surrender. (*See* Dkt. 5, ¶ 95.a.) There are no allegations that the Officers had the opportunity to confirm that Juker was not armed at that juncture. Instead, the allegations merely state that Juker, during his period of erratic behavior, set down a rifle and moved away from it at the direction of officers. (Dkt. 5, ¶¶ 32–33, 95.b.) A conspiracy claim requires showing intentional conduct by the defendant to accomplish an unlawful objective to harm the plaintiff. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

Notably absent from the Complaint is any allegations that the Officers were able to conduct a search of Juker's person to confirm the absence of additional firearms. Because of Juker's reported paranoia and prior firing of a firearm, this confirmation was of paramount importance to officers. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("…the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.") *see also Lerma-Mayoral v. City of El Centro*, 2018 WL 4537752, at *9 (S.D. Cal., Sep.

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 7.**

21, 2018) (a poor view of a suspect or inability to determine whether they are armed allows an officer to make reasonable assumptions to ensure his safety when carrying out an arrest). This provided the Officers with an articulable basis for concluding that Juker may still be armed. *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016).

Accordingly, there are no plausible allegations that Officers Lee and Howarth engaged in a conspiracy to violate Juker's rights. Instead, their reports that they believed Juker to still be armed and dangerous were reasonable, even if mistaken.[2] *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1133–34 (9th Cir. 2019). Juker had reported being armed, was behaving erratically, and the Officers did not have any opportunity to ensure Juker was no longer armed before he fled and retrieved his rifle. The conspiracy claim should be dismissed.

## C.    There is no plausible *Monell* claim against the City.

Plaintiffs' allegations regarding policies, procedures, and practices do nothing more than recite the elements of a *Monell* claim. A plaintiff may not "simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Thus, Plaintiffs must identify the specific policy, procedure, or practice that the City engages in that constitutes deliberate indifference to Juker's constitutional rights. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). The Complaint identifies a single policy—the Boise Police Department's use of force policy. (Dkt. 5, ¶ 81.) But this policy comports with Ninth Circuit use of force standards, and all other alleged "policies" are simply recitations of the elements of a *Monell* claim.

---

[2] In any event, Plaintiffs have failed to direct the Court to any cases that would clearly establish Juker's right to an assumption that he was no longer armed and dangerous at the time, and a derivative right to be immediately taken into custody.

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 8.**

Additionally, a *Monell* claim requires an underlying constitutional violation. *Lee v. City of Los Angeles*, 250 F.3d 668, 681–82 (9th Cir. 2001). Because the Officers did not use excessive force against Juker and did not engage in an unlawful conspiracy, there is no underlying constitutional violation. Accordingly, there are no plausible allegations that the City may be liable for Juker's death.

**D.      The wrongful death claim must be dismissed.**

There is no actionable wrong by any of the Defendants that can support a wrongful death claim under Idaho law. A wrongful death claim requires a plaintiff to show "an actionable wrong." *Castorena*, 149 Idaho 609, 619 (2010). Thus, if there is no actionable wrong, there cannot be an actionable wrongful death claim. As set forth above and in the Defendant's Memorandum, Defendants did not violate any of Juker's constitutional rights and were immune from liability in any event. Plaintiffs' wrongful death claim therefore fails.

**E.      Amendment would be futile.**

Plaintiffs request, as an alternative to dismissal, leave to amend their Complaint. But leave to amend is improper when "it is clear… that the complaint could not be saved by any amendment." *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Thus, no leave to amend should be granted where such amendment would be futile.[3] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Id*. (internal quotations omitted). The interactions between Juker and officers are all captured on body-camera video, so any factual amendments that Plaintiffs could make are necessarily limited. And as set forth above and in Defendant's Memorandum, existing case law

---

[3] Plaintiffs also failed to comply with Local Rule 15.1(a) regarding motions to amend pleadings.

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 9.**

shows that the Officers acted reasonably toward Juker under the circumstances. Any amendment

would therefore be futile, and leave to amend should be denied.

## II. CONCLUSION

Defendants respectfully request that the Court grant the Motion to Dismiss (Dkt. 8) and

dismiss Plaintiffs' Complaint (Dkt. 5) in its entirety.

DATED this 14th day of October, 2025.

NELSON | WILLIAMS

By:*/s/ Reid K. Peterson*
    REID K. PETERSON, Of the Firm
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of October, 2025, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person:

Chip Giles
chip@gileslaw.org
*Attorneys for Plaintiffs*

*/s/ Reid K. Peterson*
REID K. PETERSON

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT - 10.**