UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ROBIN JUKER; SHERRY FRANCIS; JORDIN JUKER SCHMIDT; and the ESTATE OF MACEY JADEN JUKER,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CHASE FIDDLER, in his official and individual capacities; JASON PIETRZAK, in his official and individual capacities; RYAN POLLARD, in his official and individual capacities; KIRK RUSH, in his official and individual capacities; CRAIG SOUSA, in his official and individual capacities; DOMINIC ROGERS, in his official and individual capacities; JACOB LEE, in his official and individual capacities; JONATHAN HOWARTH, in his official and individual capacities; RON WINEGAR, in his official and individual capacities; THE CITY OF BOISE, a political subdivision of the State of Idaho; the BOISE POLICE DEPARTMENT, a political subdivision of the State of Idaho; and John and Jane Does I–X,<br><br>　　　　　Defendants. | Case No. 1:25-cv-00304-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants' Motion to Dismiss. Dkt. 8. Plaintiffs are the family

and estate of the late Macey Jaden Juker. They allege the Defendants (law enforcement

officers with the City of Boise, as well as the City itself) violated Macey Juker's civil rights

MEMORANDUM DECISION AND ORDER - 1

and wrongfully caused his death during a policing action. Defendants ask the Court to dismiss Plaintiffs' suit because the individual defendants are immune under the doctrine of qualified immunity, and because Plaintiffs fail to sufficiently plead a policy or custom of the City of Boise caused Macey Juker's death.

The Court heard argument on Defendants' Motion on April 14, 2026. Dkt. 16. Because the Court finds Macey Juker's civil rights were not violated, and as further explained below, the Court GRANTS Defendants' Motion, DISMISSES Plaintiffs' Complaint, and GRANTS Plaintiffs 30 days to file an Amended Complaint if they so choose.

## II. BACKGROUND

At 10:24 p.m. on July 26, 2023, Macey Juker called Ada County Dispatch, reporting that, "There's people outside my house and they're trying to get in and kill me, I don't know if you guys should come, I don't know how powerful they are." Juker stated he could not see the people but guessed they numbered a couple dozen. Juker also reported "radiation was melting [his] brain" and that he had a firearm. Dispatch concluded Juker was in a possibly drug-induced crisis state.

Dispatch notified nearby Officer Jacob Lee of Juker's call. Lee waited for backup before proceeding, but he did not contact the mental health response team or a crisis negotiator. Sometime before proceeding to Juker's residence, Lee called Juker. Juker reported he had been drinking, possibly purchased heroin, felt like hurting himself, and that there were unknown individuals at his residence using a laser.

MEMORANDUM DECISION AND ORDER - 2

At that point, Officer Lee heard six gunshots, both over the phone and out the window of his patrol vehicle. Lee, along with officers Johnathan Howarth and Johnathan Rodgers, proceeded to Juker's residence. Officers encountered Juker near 19th Street and Resseguie Street. Juker was visibly scared, intoxicated, and experiencing psychosis; he was also armed with a rifle. Officer Ryan Pollard and Sergeant Kirk Rush were also present on scene.

Rush and Pollard ordered Juker to put down the rifle and put his hands on his head. Juker complied. The Complaint alleges that, although Juker was separated from his rifle by "some distance," officers did not approach to take him into custody at that point. Juker was told to walk towards law enforcement, which he did, walking about 15 yards from the rifle. Officers told Juker to stop, get down on his knees, and keep his hands above his head. Juker again complied. With Juker apparently compliant, separated from his rifle, and one the ground, one of the officers reported they were going to "end this pretty quick."

But before officers could arrest him, Juker stood, ran, and ignoring the officers' commands to stop, retrieved the rifle and fired multiple shots in the air. Officers fired at Juker, striking him several times. After being struck, Juker fell to the ground and fired again. Officers fired several more shots toward Juker. Juker was hit a total of nine times, and ultimately died from his injuries.

Plaintiffs—Juker's estate, his parents, and his sister—filed this action on June 12, 2025, alleging Juker had been subjected to excessive force in violation of his constitutional rights, that Defendants conspired to hide that fact, and that the City of Boise's policies led to Juker's death. Dkt. 5. Defendants moved to dismiss, arguing that the Complaint failed

MEMORANDUM DECISION AND ORDER - 3

to state a claim. Dkt. 8. Plaintiffs responded, Dkt. 10, and Defendants replied. Dkt. 12. The Court heard oral arguments on Defendants' Motion on April 14, 2026, and took the matter under advisement. Dkt. 16.

The matter is now ripe for review.

### III. LEGAL STANDARDS

#### A. Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) if the plaintiff would not be entitled to relief even if the complaint's well-pleaded facts are true and all reasonable inferences are drawn in favor of the plaintiff. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Factual allegations need not be detailed, but they must be sufficiently plausible "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Only well-pleaded allegations of fact must be assumed true. Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is the Court "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

If the Court grants a motion to dismiss, it should also grant leave to amend unless it is beyond doubt that amendment would be futile. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

MEMORANDUM DECISION AND ORDER - 4

**B. Qualified Immunity**

Qualified immunity entitles a law enforcement officer "not to stand trial or face the other burdens of litigation" on a section 1983 claim if the officer's conduct did not violate a clearly established federal right. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The qualified immunity inquiry asks two questions: (1) was there a violation of a constitutional right, and if so, (2) was the right at issue clearly established at the time? *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The standard for the second prong is whether every reasonable officer in that situation would know that his actions were unlawful in light of clearly established law. *Mattos v. Aguarano*, 661 F.3d 433, 422 (9th Cir. 2011). The inquiry may proceed in any order. *Cardenas-Ornelas v. Johnson*, 165 F.4th 1234, 1240 (9th Cir. 2026).

**C. *Monell* Liability**

Municipalities can be sued under § 1983 for civil rights violations committed pursuant to governmental custom. *Mabe v. San Bernandino Cnty.*, 237 F.3d 1101, 1110 (9th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978)). To state a claim against a municipality, the plaintiff must show that he: 1) was deprived of a constitutional right, 2) pursuant to a policy or custom of the municipality, 3) which amounted to deliberate indifference to the plaintiff's constitutional right, and 4) the policy or custom was the moving force behind the violation. *Mabe*, 237 F.3d at 1110–11. To qualify as a "policy or custom" for *Monell* purposes, an unwritten policy or custom must be so persistent and widespread that it constitutes a permanent and settled practice. *Monell*, 436 U.S. at 691.

MEMORANDUM DECISION AND ORDER - 5

## IV. DISCUSSION

This case is a tragedy. Of that there is no question. But the officers are not liable because they are entitled to qualified immunity on the facts of the Complaint. And the City is not liable because the Complaint recites mere barebones elements of a *Monell* claim. Since there is no actionable legal wrong alleged in the complaint, Juker's relatives' wrongful death claims fail as well. The Court must, therefore, GRANT the Motion to Dismiss.

### A. Waived Arguments

Before reaching the merits, however, the Court notes Plaintiffs conceded a few matters raised by Defendants' Motion. At oral argument, Plaintiffs conceded Chief Winegar is not a proper defendant, that Boise Police Department is a redundant party to the real party in interest (the City of Boise), and that Jordin Juker is not a proper plaintiff. The Court also notes the official capacity claims against the individual defendants are duplicative of the claims against the City and are dismissed as well. *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015). Accordingly, Chief Winegar, the Boise Police Department, and the individual defendants in their official capacities are dismissed as duplicative of the City of Boise, and Jordin Juker is dismissed as a plaintiff.

### B. Qualified Immunity

Defendants argue the officers are entitled to qualified immunity because they did not use excessive force, Dkt. 8-1, at 5–8, and Juker had no "clearly established" right to be free from lethal force under the circumstances. *Id.* at 8–9. Plaintiffs counter the officers' actions were objectively unreasonable under the Ninth Circuit's four-factor test for

MEMORANDUM DECISION AND ORDER - 6

excessive force. Dkt. 10, at 8–9. Aside from asserting Juker had a clearly established right to be free from excessive force, Plaintiffs offer no argument or comparator cases on whether Juker had a clearly established right under the circumstances.

"[W]here a defendant asserts an official immunity defense, the district court first decides whether the facts alleged in the complaint, assumed to be true, yield the conclusion that the defendant is entitled to immunity." *Butler v. San Diego Dist. Attorney's Off.*, 370 F.3d 956, 963–64 (9th Cir. 2004). "If, taking the facts as stated in the complaint, the defendant is entitled to immunity, no discovery should be permitted and the case should be dismissed." *Id.*; *see also Est. of Strickland v. Nevada Cnty.*, 69 F.4th 614 (9th Cir. 2023); (affirming dismissal for failure to state a claim for excessive force); *al-Kidd*, 563 U.S. at 743–44 (reversing denial of qualified immunity at the motion to dismiss stage).

### 1.  Clearly Established Law

Regardless of whether the officers' actions constituted a constitutional violation, the court cannot say the officers violated Juker's clearly established rights. In the context of the doctrine of qualified immunity, "clearly established" is a term of art with a specific meaning: to find a right clearly established, the court must identify a judicial opinion issued prior to the alleged civil rights violation where an officer acting in similar circumstances was held to have violated the Constitution. *Zorn v. Linton*, 607 U.S. __, 146 S. Ct. 926, 930 (2026) (per curiam). The case need not be "directly on point," but it must be sufficiently particularized that the comparator case places the constitutionality of the defendant's actions beyond reasonable debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). Cases like *Graham v. Connor* and *Tennessee v. Garner*, which established the general

MEMORANDUM DECISION AND ORDER - 7

principles of Fourth Amendment excessive force analysis, are too general to constitute a comparator case. *Id.* at 80. "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

Plaintiffs offer no such case, arguing instead that "Juker had clearly defined constitutional protections against undue and unreasonable force and the improper use of excessive lethal force." Dkt. 10, at 8. But "[p]rinciples stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice." *Zorn*, 146 S. Ct. at 930. The Court has not identified a controlling case arising prior to Juker's death where officers were found to have violated the Constitution by using lethal force on a decedent who was actively discharging a firearm in a residential area. Dkt. 5, at ¶¶ 31, 37–38. *Cf. Gorostieta v. California Highway Patrol*, 2018 WL 10670317, at *6 (C.D. Cal. Dec. 6, 2018), *aff'd sub nom. Gorostieta v. Hendrix*, 805 F. App'x 528 (9th Cir. 2020) (granting summary judgment to officer defendants who used lethal force on decedent, who fired a shotgun in the air while in the throes of a mental health crisis). Because Plaintiffs have not identified a comparator case which would make the facts of the complaint a clearly established constitutional violation, the Court finds Defendants are entitled to qualified immunity.

### 2. *Constitutional Violation*

Plaintiffs allege Defendants used excessive force when they shot Juker. Law enforcement officers' use of deadly force is subject to the Fourth Amendment

MEMORANDUM DECISION AND ORDER - 8

reasonableness standard. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation modified).

In assessing the Government's interest, courts consider: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Williams v. City of Sparks*, 112 F.4th 635, 643 (9th Cir. 2024) (citation modified). The second factor—whether the suspect posed an immediate safety risk—is most important. *Id.* "Other relevant factors may include the availability of less intrusive force, whether proper warnings were given, and whether it should have been apparent to the officer that the subject of the force used was mentally disturbed." *Id*. (citation modified). Courts must judge officers' actions based on what a reasonable officer on scene knew, and must make allowances for officers' need to make split-second decisions in emergencies. *Kisela*, 584 U.S. at 103.

a. Juker's Interest

Officers engaged Juker with deadly force. *Seidner v. de Vries*, 39 F.4th 591, 596 (9th Cir. 2022) (use of a firearm is categorically deadly force). "Deadly force is the most severe intrusion on Fourth Amendment interests because a person has a fundamental interest in his own life." *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807,

MEMORANDUM DECISION AND ORDER - 9

821 (9th Cir. 2023) (citation modified). Thus, Juker's interest weighs heavily in favor of Plaintiffs' claims.

    b. Crime of Investigation

At oral argument, Defendants noted officers were investigating Juker for discharging a firearm in a residential area. Plaintiffs counter the crimes Juker was under investigation for—allegedly unlawful discharge of a firearm or obstructing an official investigation—are merely misdemeanors. Dkt. 5, at ¶ 36.

The Ninth Circuit has used the crime of arrest factor under *Graham* in two ways. *See Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019). Either the factor stands for the proposition that: 1) the State has a freer hand to use force when apprehending "serious" criminals (i.e. felons), or 2) officers may use their knowledge about the crime of investigation (including its violent nature) to determine whether to consider the suspect dangerous. *Id. Nehad* refers to this latter interpretation as the "proxy-for-danger" approach. *Id.*

The former application of this factor would not aid Defendants because, under *Nehad*, misdemeanor investigations do not, on their own, justify substantial force. *See id.* The proxy-for-danger approach comes close to collapsing into the threat of harm factor. But officers can certainly rely on the full context of the incident in determining whether a suspect presents a threat of harm. *See Barnes v. Felix*, 605 U.S. 73, 80–81 (2025). The crime of investigation here involves the possession and use of a deadly weapon, which would justify officers in considering Juker dangerous. *See* Dkt. 5, at ¶ 36. Under the proxy-for-danger approach, this factor favors Defendants. (Although, because the threat of harm

MEMORANDUM DECISION AND ORDER - 10

arose after officers attempted to peacefully end the conflict, this factor is not dispositive in this case.)

c. Threat of Harm

The Complaint's allegation that Juker was actively discharging his firearm at the time of the shooting strongly favors Defendants here. As noted above, the risk of grave injury to officers or others is the most important *Graham* factor. *Williams*, 112 F.4th at 643. The Ninth Circuit has described it in all-but-conclusive terms: "'Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others,' the use of deadly force is constitutionally permissible." *Est. of Hernandez v. City of Los Angeles*, 139 F.4th 790, 799 (9th Cir. 2025) (citing *Garner*, 471 U.S. at 11).

Ninth Circuit precedent considers several factors in determining whether a decedent's possession of a weapon qualified as a threat of serious harm under the circumstances. First, courts consider whether the officers gave themselves time to determine the true extent of the threat, *see Nicholson v. City of Los Angeles*, 935 F.3d 685, 693 (9th Cir. 2019); *Est. of Lopez v. Gelhaus*, 871 F.3d 998, 1010–11 (9th Cir. 2017), or whether the officers attempted to end the confrontation peaceably, *Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997). Second, courts consider whether the decedent showed a willingness to use the firearm. *George*, 736 F.3d at 839. Third, courts consider whether the weapon was directed at the officers or others at the time of the shooting. *Id.* at 838. Although a firearm aimed at police is generally sufficient to constitute a threat, *see id.*, it is not categorically necessary: "If the person is armed—or reasonably suspected of being

MEMORANDUM DECISION AND ORDER - 11

armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Est. of Strickland*, 69 F.4th at 620 (quoting *George* 736 F.3d at 838).

As the Complaint alleges, Juker told Officer Jacob Lee[1] that he "felt like hurting himself" shortly before Lee heard six shots both over the phone and out the window of his cruiser. Dkt. 5, at ¶ 28. When officers arrived on scene, they found Juker "undoubtedly scared, intoxicated, suicidal, suffering from hallucinations and a diminished mental state." *Id.* at ¶ 32. Juker initially complied with police commands, but when police attempted to secure him, he retreated 15 yards, grabbed his gun, and began to fire. *Id.* at ¶¶ 33–38. These events occurred sometime after 10:24 PM on July 26, 2023. *Id.* at ¶ 21.

Even drawing the reasonable inference that Juker was firing in the air, and assuming all well-pleaded facts are true, the officers still faced a reasonable threat of danger to themselves or others. This was not an instance of police acting in haste before they could assess the situation. *Cf. Est. of Lopez*, 871 F.3d at 1010–11. Police ordered Juker to disarm himself and gave him enough time to comply. Nor was this an instance where police did not attempt to end the conflict peacefully. *Cf. Harris* 126 F.3d at 1201. Again, the officers tried to arrest Juker without resorting to violence. And Juker demonstrated his willingness to use his firearm by using it—in direct defiance of the officers' prior direction to drop his rifle, step away from it, and get on his knees. *Cf. George*, 736 F.3d at 839. Juker's rush to grab his gun and his act of firing it constituted a "furtive movement" or "harrowing gesture" such that officers did not have to wait until Juker aimed the gun at someone. *See Est. of*

---

[1] Lee is listed in the Complaint's caption and mentioned throughout its factual allegations, but is not named as a defendant in the Complaint itself. *See* Dkt. 5, at ¶¶ 4–18.

MEMORANDUM DECISION AND ORDER - 12

*Strickland*, 69 F.4th at 620.

It is possible that Juker would never have aimed his rifle at anyone. But under the circumstances, recognizing that officers do not have the benefit of hindsight and must make split-second decisions, *Kisela*, 584 U.S. at 103, the allegations of the Complaint indicate the officers had probable cause to believe Juker posed a threat of grave harm to themselves or bystanders. This factor supports Defendants.

      d. <u>Flight Risk</u>

Courts also consider whether officers reasonably believed that the suspect was attempting to evade or resist arrest. *Est. of Strickland*, 69 F.4th at 619. The officers were attempting to take Juker into custody at the moment he got up and ran 15 yards to his gun. Dkt. 5, at ¶ 37. Under the circumstances, a reasonable officer could have believed Juker was attempting to evade or resist arrest. This weighs in favor of Defendants.

      e. <u>Miscellaneous Factors</u>

Plaintiffs do not squarely contest that, at the moment of force, the officers acted reasonably. Rather, they argue the officers unreasonably failed to head off the fatal confrontation by contacting mental health response units, securing a crisis negotiator, or taking Juker into custody immediately after he was on his knees. Plaintiffs argue that if the officers took those actions, Juker might still be alive.

Historically, the Ninth Circuit assumed without deciding that the failure to take prior de-escalatory measures was a relevant factor. *See Est. of Strickland*, 69 F.4th at 620. The Supreme Court's recent decision in *Barnes v. Felix* suggests the failure to take de-escalatory measures is irrelevant unless the failure impacts whether officers reasonably

perceived a threat at the time of the use of force. 605 U.S. at 80–81.

Although events leading up to the use of force are relevant to determining whether officers reasonably perceived a threat, the context is relevant insofar as it shows "how a reasonable officer would have understood and responded to [subsequent events]." *Id.* Prior context may lead officers to reasonably believe the suspect was dangerous in the moment the officer acted. *Id.* at 81 (discussing how the context of a dangerous car chase in *Plumhoff v. Rickard*, 572 U.S. 765 (2014) provided the basis for officer's probable cause to use lethal force once the suspect's vehicle was immobilized because it gave officers probable cause to believe the suspect would resume a dangerous getaway if possible). Or it can illustrate why the officers should have perceived the defendant as harmless. *Barnes*, 605 U.S. at 80. But the touchstone is always whether the officers perceived a threat when they used force. "[I]t is, after all, the officer's choice in that moment that is under review." *Id.* at 80.[2]

Plaintiffs' context does not suggest the officers were wrong in believing Juker to pose a threat of danger at the time they shot. Instead, it suggests there were offramps officers could have taken which might have ended the conflict without loss of life. What-ifs will always haunt the thoughts of the bereaved, but they are not relevant to determining the legally significant question: whether, at the moment of the shooting, the officers had probable cause to believe Juker posed a threat to the officers or bystanders. *See id.* at 80–81. Thus, Plaintiffs' context does not change the fact that the Complaint, on its face, shows

---

[2] To the extent the failure to employ de-escalatory measures remains a relevant factor and would apply here, it is not dispositive. *See Est. of Strickland*, 69 F.4th at 623 (affirming grant of motion to dismiss despite counting the failure to exercise de-escalatory measures in favor of the plaintiffs).

MEMORANDUM DECISION AND ORDER - 14

officers acted reasonably.

Plaintiffs also attempt to infer from one of the officer's comments that the officers intended to shoot Juker in cold blood. While Juker was on his knees, separated from his gun, and complying with police commands, one of the officers allegedly stated they were "going to end this pretty quick." Dkt. 5, at ¶ 35. Plaintiffs seek to draw the inference that the officer was expressing the intent to "simply kill Juker rather than follow standard protocols." *Id.*; *see also* Dkt. 10, at 4 (repeating inference). Even if that inference is reasonable and well-pleaded—which it is not[3]—it is irrelevant. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. Because the excessive force inquiry looks to whether the officer's actions were objectively reasonable, the mental state of that officer is not relevant to the Fourth Amendment analysis.

Plaintiffs further note Juker was plainly suffering from a mental health crisis at the time of the shooting. Dkt. 10, at 9. When police know that a suspect is under the influence of a mental health emergency, that fact can suggest a subsequent use of force was

---

[3] The Complaint stops short of pleading that the officer actually had the mental state it attributes to him. Rather, it pleads that the officer was "*perhaps* indicating an intent . . . ." Dkt. 5, at ¶ 35 (emphasis added). Although the Court must assume the truth of all well-pleaded facts, it is not required to assume the truth of the complaint's unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001). Here, the Complaint falls short of even pleading a fact, pleading instead in the form of speculation. Thus, the speculation is not itself a well-pleaded fact, and the statement does not otherwise permit the reasonable inference that the officer was expressing murderous intent in the context of the Complaint as a whole.

MEMORANDUM DECISION AND ORDER - 15

unreasonable. *Deorle v. Rutherford*, 272 F.3d 1272, 1283, 1286 (9th Cir. 2001). However, the Ninth Circuit has expressly limited that factor to circumstances where the suspect does not pose a threat to officers or others. *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 920–21 (9th Cir. 2024) (discussing *Deorle*). Juker's mental state is, therefore, irrelevant as well.

Finally, that the Complaint alleges multiple offices gave verbal warnings or orders to stop. Dkt. 5, at ¶¶ 49, 57, 62, 73, 76. Appropriate warnings suggest that a subsequent use of force is reasonable. *Williams*, 112 F.4th at 643.

Considering the *Graham* factors, as well as the other relevant factors raised by the parties, the Court finds the Complaint fails to state a claim for excessive force. At the moment of shooting, a reasonable officer would have had an objective basis to believe Juker posed an imminent threat of grave harm to officers or bystanders, and the surrounding factors do not outweigh that "most important" factor. *Est. of Strickland*, 69 F.4th at 620. Accordingly, the Court GRANTS Defendants' Motion as to Plaintiffs' excessive force claim against the individual defendants.

### C. Conspiracy

The Complaint pleads that all Defendants conspired to conceal their unconstitutional use of force by lying about their actions and motivations in order to deprive Plaintiffs of their right to recover. Even assuming there is a due process right to recover for excessive force distinct from the right to not be subjected to excessive force in the first place, Plaintiffs have not stated a claim because the Complaint does not raise the reasonable inference of a conspiratorial agreement.

MEMORANDUM DECISION AND ORDER - 16

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (citation modified). Parallel conduct, without more, is insufficient to plead a conspiracy. *See Twombly*, 550 U.S. at 556–57.

Accepting the Complaint as true, and drawing all reasonable inferences in favor of the Plaintiffs, the facts are: 1) the officers did not successfully secure Juker between when he got on his knees and when he stood up to grab the gun, Dkt. 5, at ¶ 80, and 2) the officers later said they did not immediately secure Juker because they could not tell whether he had other weapons on his person. Dkt. 5, at ¶ 95. Plaintiffs attempt to draw from those two facts the inference that Defendants engaged in a conspiracy to conceal a constitutional violation.

It is not reasonable to draw the inference, from those facts, that the officers unreasonably believed it was unwise to secure Juker when they did or lied about their motivation after the fact. *See Iqbal*, 556 U.S. at 678–79. Again, the Complaint alleges the officers knew Juker was mentally unstable, feared them, and was positioned a short distance from his gun. The Complaint cannot support the inference that it was unreasonable for officers to take their time in assessing the situation. If the officers believed securing Juker fraught, subsequent events showed that fear was well founded: Juker ran to grab his gun when officers attempted to secure him and fired his gun into the air. Dkt. 5, at ¶ 37. Nor would it be reasonable to infer simply from the fact the officers behaved in the same way or made the same statements about the events that they had improperly agreed to do

MEMORANDUM DECISION AND ORDER - 17

so. *See Twombly*, 550 U.S. at 556–57. The Complaint does not, therefore, state a claim for a conspiracy to deprive Juker or the Plaintiffs of their rights, so the Motion must be GRANTED as to those claims as well.

### D. *Monell* Liability

Because the Court finds no underlying constitutional violation on the face of the Complaint, Plaintiffs' *Monell* claim must also be dismissed.

Defendants further argue there are no plausible allegations showing a policy or custom, or that any policy or custom was a moving force behind the underlying violation. *Cf. Mabe*, 237 F.3d at 1110–11. The Complaint pleads only that Boise had a policy regarding the use of force. As the Complaint indicates, Boise's policy regarding the use of force is that it can only be used to the extent necessary to protect officers or others from an imminent danger of unlawful force. Dkt. 5, at ¶ 81. That policy cannot legally constitute deliberate indifference to the rights of Juker when it essentially parrots the Constitutional standard for the reasonable use of force. *Est. of Hernandez*, 139 F.4th at 799 (citing *Garner*, 471 U.S. at 11).

Plaintiffs counter by arguing the Complaint alleges Boise failed to exercise reasonable care in hiring, training, and supervising officers, and that Juker would not have been killed had Boise exercised reasonable care. But Plaintiffs' allegations are entirely conclusory in that they do not allege how the City trained its officers or should have trained them differently. *See Werenka v. City of Boise*, 2024 WL 342326, at *11–12 (D. Idaho Jan. 30, 2024) (finding, on similar allegations, a conclusory recitation of the elements).

Accordingly, the Court must dismiss Plaintiffs' *Monell* claim for lack of an

underlying wrong and because the Complaint does not raise a reasonable inference of a policy or practice which caused Juker's death.

### E. Wrongful Death Liability

Idaho Code § 5-311 provides a wrongful death action for the heirs of a wrongfully-killed decedent. "The two elements that must be proven in a wrongful death suit are: (1) that an actionable wrong was committed by the defendant against the decedent, and (2) that the same actionable wrong caused the decedent's death." *Castorena v. Gen. Elec.*, 238 P.3d 209, 219 (Idaho 2010). Because the Court finds the Complaint fails to state a claim for an actionable wrong, this claim must be dismissed as well.

### F. Leave to Amend

In Reply, Defendants ask the Court to dismiss the Complaint with prejudice and without leave to amend. Although the Complaint currently fails to state a claim, the Court cannot determine to a legal certainty that no set of facts could possibly resurrect it. The Court, therefore, GRANTS Plaintiffs leave to amend.

### V. CONCLUSION

The death of Macey Juker is a tragedy. It is a tragedy that Juker had alcohol in his system; that it left him vulnerable to a mental health crisis; and that he had access to a rifle at the time. But the facts of the Complaint fail to raise the reasonable inference that Boise Police Officers acted unreasonably when they used lethal force to subdue him, that they engaged in a conspiracy to cover up their actions, or that the City of Boise's police department policies caused Juker's death. Because the Complaint fails to raise those inferences, the Court GRANTS Defendants' Motion to Dismiss all claims.

MEMORANDUM DECISION AND ORDER - 19

## VI. ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (Dkt. 8) is GRANTED.

2. Plaintiffs are GRANTED leave to amend. Any amended complaint must be filed with 30 days of the entry of this Order. Failure to file an amended complaint will result in the Court dismissing this case with prejudice without further notice.

DATED: June 11, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 20